Springer *v.* Crowell.

---

## Cornelius H. Springer *vs.* Guilford Crowell.

Under an allegation, in an action of tort, that the defendant sold a vessel to the plaintiff, and the plaintiff was induced to buy her by the false representations of the defendant, the plaintiff may recover for the whole damage occasioned to him by the false representations, although the record title stood in the names of and was conveyed by others besides the defendant.

In an action for deceit, an allegation that the defendant sold half of a vessel to the plaintiff is supported by evidence of a written agreement to sell the vessel to the plaintiff and H., followed by delivery, and of an agreement between the plaintiff and H. that each should take half.

Tort. The declaration alleged that the defendant sold to the plaintiff one half of a schooner; that the plaintiff was induced to buy the schooner by representations of the defendant that she was sound, and not rotten, and all right so far as he knew; and that the defendant, at the time of the representations, knew that the schooner was badly rotten and unsound. The answer denied all the plaintiff's allegations; admitted that the defendant sold seven thirty-seconds of the schooner to "the defendant and two other parties," and that he then knew that she was to some extent unsound; but denied the representations alleged.

At the trial in the superior court, before *Morton,* J., it appeared that the plaintiff and Thomas G. Hunt entered into negotiations with the defendant for the sale of the schooner on July 24, 1866, and the defendant, on that date, at the request of the plaintiff, signed an agreement of which the material part was as follows: " I agree, for myself and owners of schooner

John Ponder, Jr., to sell said schooner to Cornelius H. Springer and Thomas G. Hunt for the sum of $11,000, and to deliver said vessel at the port of New Bedford after performing a voyage to Lynn, for which port the vessel is now loading."

It further appeared that the plaintiff, before the negotiation, had agreed with Hunt and Jonathan Bourne that he was to take such portion of the vessel as he could raise money to pay for, and that Hunt and Bourne were to take the balance; that at the time the above agreement was executed the plaintiff made up his mind to take half of the schooner, and so informed Hunt, but gave no notice to the defendant of the share he meant to take; that the schooner was delivered by the defendant according to the terms of his agreement; and that the defendant, the plaintiff and Hunt went to the office of Bourne at New Bedford, and there, in the presence of the defendant, bills of sale of the schooner were delivered and accepted, and the purchase money paid. The bills of sale were produced in court, and were as follows: of seven thirty-seconds from the defendant to Bourne and Hunt; of two thirty-seconds from Leavitt Hobart and Payson Crowell to Hunt; of seven thirty-seconds from Samuel Crowell, Henry V. Schenck and Seth W. Lewis to Bourne; and of sixteen thirty-seconds from the last three named to the plaintiff. There was no evidence that the plaintiff knew the extent of the defendant's interest in the vessel. There was evidence that one of the crew of the schooner had told the defendant that she was rotten; and other evidence that the defendant knew her to be in bad condition.

The defendant asked the judge to give the jury the following instructions: " 1. If the defendant did not, of his own knowledge, know that the vessel was more rotten than a vessel of her age ordinarily would be, he had a right to represent her as sound for a vessel of her age, as far as he knew, notwithstanding the statement made to him that she was rotten. 2. If the defendant conveyed but seven thirty-seconds of the vessel, he can only be liable, under the declaration, for seven thirty-seconds of the damage, although he agreed to convey more. 3. The evidence of the plaintiff's title does not support his declaration that the

defendant sold him one half of said vessel, and does not support the case as set forth in his declaration."

The judge refused to give the instructions prayed for, but instructed the jury " that the burden of proof was on the plaintiff to show that the representations were made as alleged in the declaration; that they were in fact false; that the defendant knew them to be false; and that the plaintiff was induced by them to make the purchase; and that, if the jury were satisfied that the defendant sold to the plaintiff and the plaintiff bought one half of the vessel, the fact that, when the record title came to be made, the defendant conveyed only seven thirty-seconds of the vessel, would not prevent the plaintiff from recovering in this action to the extent of his interest." The jury found for the plaintiff, and the defendant alleged exceptions.

*J. M. Day*, for the defendant.

*C. T. Bonney*, for the plaintiff.

COLT, J. The defendant's first request for instructions was not insisted on at the argument. The instructions given on that head stated the true rule.

The second request was rightly refused. The action is for damages occasioned by the false representations of the defendant in the sale of one half of a certain vessel. The gist of the action is the fraud practised. The ownership of the defendant is not an essential element. If he was acting merely as agent of others, he would be liable. The false affirmation of the defendant, made knowingly, to the plaintiff's loss or his own gain, is enough. *Randall* v. *Hazelton*, 12 Allen, 412. But, under the instructions given, the jury have found that the defendant sold and the plaintiff bought one half the vessel.

As to the last request, there was abundant evidence to go to the jury that the sale was at least of one half the ship. The agreement produced is an agreement for himself and owners to sell the whole to the plaintiff and Hunt.

*Exceptions overruled.*